IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






No. 254-03





GARY BEAUCHAMP, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE THIRD COURT OF APPEALS


WILLIAMSON COUNTY





 The opinion was delivered PER CURIAM. Keller, P.J., concurred in the
result.

O P I N I O N



 Appellant was charged in a two-count indictment with aggravated assault. The first count alleged
that he threatened Jerry Horton with imminent bodily injury and used or exhibited a deadly weapon, namely
a baseball bat or stick, during the commission of the assault. The second count alleged that appellant
caused bodily injury to a person appellant knew was a public servant while the public servant was lawfully
discharging an official duty, or in retaliation or on account of an exercise of official power or performance
of an official duty as a public servant, by kicking that person.

 Appellant lived in a trailer on 23 acres owned by appellant's mother. The charges arose from an
incident involving appellant's long-time neighbors, the Hortons, who lived on 157 acres next to the
Beauchamp property. On May 4, 2001, appellant went to their home and demanded that they stop using
heavy machinery because of the high noise level the machines produced and because the work was causing
flooding and snakes on appellant's property. The Hortons were not using machinery, and the noise was
an auditory hallucination experienced by appellant. There were neither floods nor excess snakes. 
Appellant left, but returned carrying a baseball bat. Mr. Horton testified that appellant held the bat over
his head and made "very obscene threatening remarks about people having to be carried out in body bags." 
Appellant left before sheriff's deputies arrived.

 Mental health issues were quickly recognized, and, on May 7, Dr. Richard Coons was appointed
to examine appellant for competence, mental illness, mental retardation, and sanity.

 The record reflects that appellant suffered from traumatic organic brain syndrome that resulted from
an automobile accident when appellant was seventeen years old. At the time of the offense, appellant was
taking Zyprexa, but was experiencing atypical side effects, specifically, extreme insomnia, which in turn
produced hallucinations. At the time of sentencing on September 23, 2002, appellant was no longer on
medication and was not having hallucinations. He had been seen regularly since the incident by two
MHMR psychiatrists, both of whom noted in their records that appellant was doing extremely well, had
stopped using alcohol, and had greatly reduced his use of tobacco. Neither believed that appellant was
a threat to himself or others.

 Because of his injury, appellant suffered from short-term-memory deficits and found it difficult to
maintain steady outside employment, although there was testimony that he raised cattle for sale on a
continuing basis. His only regular source of income was disability compensation (SSI). His sister testified
that, while appellant maintained a bank account, paid his bills, and successfully lived alone on the property for
several years, his mother
sometimes had to help
him financially.

 During most of the time between appellant's arrest and the sentencing hearing, appellant had been
out of custody on bond. The only problem reflected in the record during that time period was appellant's
refusal, then agreement, to give a urine sample to the pretrial-services officer.

 On July 1, 2002, appellant plead guilty pursuant to a plea agreement that called for the state to
recommend four years of deferred-adjudication community supervision and a $2,500 fine, and to request
that the trial court not enter a deadly weapon finding until and unless appellant was finally adjudicated in
the case. As part of the plea agreement, the state abandoned count two of the indictment. The record
indicates that the defense counsel understood the plea bargain to include the opportunity to argue for a
lesser fine because of appellant's limited financial resources. Sentencing was set off to allow the preparation
of a PSI.

 At the sentencing hearing, Mr. Horton, the state's only witness, testified about the verbal threats
and the display of a baseball bat and about prior visits from appellant while intoxicated. He also testified
that: he had never told appellant to stay away from the Hortons' property; appellant has made no motion
to approach him or his family while carrying the bat; and appellant had not harmed anyone he knew of, nor
had appellant ever been violent toward him or his family beyond the verbal threats. Although he had not
seen appellant since the incident, Horton testified that he felt threatened by him.

 Appellant presented his medical records from the two MHMR psychiatrists through the business
records exception to hearsay, and live testimony from his sister, a neighbor, a family friend, and a woman
who had for a number of years been a nurse who took care of appellant's brother, who was in a persistent
vegetative state. All of the live witnesses had known appellant for long periods of time, both when he was
on medications and when he was not. All agreed that appellant was having problems with medication at
the time of the offense, but was off medication at the time of sentencing and was having no problems. All
had frequent contact with appellant, sometimes daily, and all agreed that appellant was not a threat and was
not violent.

 During argument to the trial court, the state asserted that Mr. Horton feels threatened and that his
fear was sufficient reason to banish appellant from his home as Mr. Horton had requested. Defense counsel
noted that appellant does not use alcohol, the incident was triggered by inappropriate medication that is no
longer prescribed, and that there is no evidence to support a finding that appellant is a threat to anyone. 
The only reason to bar appellant from his home was Mr. Horton's fears.

 Appellant objected to sections of the PSI because the required mental evaluation had not been
done and because the probation officer's recommendation was inappropriate because he was not qualified
to make judgments about appellant's current mental state. Appellant argued that the recommendation was
based on out-dated psychiatric information and the probation officer's own opinions and conjecture, and
with emphasis on the feelings of Mr. Horton.

 The trial court accepted the plea agreement and included, as a condition of appellant's community
supervision, that he could not continue to live at his residence, which adjoined the complainant's property,
and could enter his own property only if supervised. (1)

 Appellant filed a handwritten notice of appeal, stating that he was "appealing the conditions of
community supervision." Eight days later, appellant filed a typed formal amended notice of appeal, which
stated that he was appealing the court's "unreasonable and unauthorized conditions" that were placed upon
him in the granting of "the deferred adjudication probation" and the imposition of a "mandatory fine when
the plea bargain agreement included the [c]ourt's consideration of a lessor [sic] fine to be imposed." Three
weeks later, appellant filed a typed formal second amended notice of appeal specifying that he was
appealing the trial court's "ordering as a condition of his probation that he not be allowed to live at his place
of residence nor being allowed on the property without supervision." That notice also indicated that
appellant was appealing the trial court's overruling of his objections to the pre-sentence report "that a
psychological evaluation was not performed or was insufficient to determine [his] ability to function
independently and whether [his] mental condition is chronic," and its refusal to consider his lack of ability
to pay fines, court costs, and community-supervision fees.

 In response to the state's motion, the court of appeals dismissed appellant's appeal for want of
jurisdiction. Beauchamp v. State, No. 03-00647-CR (Tex.App. - Austin, delivered November 21,
2002). (2) It noted appellant's promise, as part of his plea agreement, not to appeal and that such promise
is binding when the court follows the agreed punishment recommendation. Id. It also stated that appellant's
notice of appeal did not comply with Texas Rule of Appellate Procedure 25.2(b)(3) and thus did not
invoke its jurisdiction. Id.

 Appellant asserts that the court of appeals erred in dismissing his appeal on the grounds that his
notice of appeal failed to comply with Rule 25.2(b)(3) because the extra-notice requirements of Rule
25.2(b)(3) do not apply. Appellant argues that, because the trial court added an unreasonable condition
of community supervision that was not a part of his plea agreement, the trial court did not follow the plea
agreement, and therefore, the extra-notice requirements do not apply. (3)

 The version of Rule 25.2(b)(3) that was in effect at the time of appellant's appeal required that the
notice of appeal state that the appeal was for a jurisdictional defect, that the substance of the appeal was
raised by written motion and ruled on before trial, or that the trial court had granted permission to appeal. 
These additional requirements for the notice of appeal apply only if the punishment assessed does not
exceed the recommended and agreed-to punishment. The failure to include at least one of the required
extra-notice requirements in a situation in which one is required deprives the appellate court of jurisdiction
over the appeal. Woods v. State, 68 S.W.3d 667, 669 (Tex. Crim. App. 2002), citing Vidaurri v. State,
49 S.W.3d 880 (Tex. Crim. App. 2001).

 The extra-notice requirements of Rule 25.2(b)(3) apply equally to defendants who are placed on
regular community supervision and deferred-adjudication community supervision. Id. It is undisputed that
appellant did not comply with Rule 25.2(b)(3). Neither appellant's initial handwritten nor his subsequent
amended notices of appeal specify that the appeal is for a jurisdictional defect, concerns a ruling on a
written and ruled on pre-trial motion, or that appellant received the trial court's permission to appeal.
However, if the punishment assessed exceeded that which was recommended by the prosecutor and
agreed to by appellant, he was not required to do so.

 The state argues that appellant waived his right to appeal pursuant to the plea agreement and that
the court of appeals noted that waiver in its opinion. However, the court of appeals could not properly
reach the issue of waiver if it was correct in its determination that it did not have jurisdiction to consider the
appeal because of appellant's failure to comply with Rule 25.2(b)(3). If an appellate court's jurisdiction
is not properly invoked, its "power to act is 'as absent as if it did not exist.'" Woods, supra, 68 S.W.3d at
669 (quoting White v. State, 61 S.W.3d 424, 428 (Tex. Crim. App. 2001)). Thus the court of appeals
must first have jurisdiction to consider any appeal before it can decide that the right to an appeal has been
knowingly, intelligently, and voluntarily waived.

 This Court must also have jurisdiction before it can resolve an issue. By its plain language, Tex.
Code Crim. Proc., art. 11.07, "establishes the procedures for an application for writ of habeas corpus
in which the applicant seeks relief from a felony judgment imposing a penalty other than death." The writ
is returnable to this Court "after final conviction in any felony case." Art. 11.07, § 3. Applicant here is
challenging a condition of community supervision and at the time of filing was not finally convicted. We
therefore do not have jurisdiction to resolve this case pursuant to art. 11.07.

 We observe that Tex. Code Crim. Proc., art. 11.072, now provides specific procedures for
seeking habeas corpus relief in cases in which community supervision has been ordered. (4) By plain and
explicit language, challenges to conditions of community supervision must be filed pursuant to that article.
A subsection specifies that a condition of community supervision may be challenged "only on constitutional
grounds." Art. 11.072, § 3(c). Thus, an appellant who wishes to challenge a condition of community
supervision must do so pursuant to art. 11.072. and on constitutional grounds.

 Another subsection, art. 11.072, § 3(a), states that an application may not be filed pursuant to art.
11.072 if the applicant could obtain the requested relief via direct appeal. (5) We have held that appeals from
an order granting or revoking community supervision are authorized by Tex. Code Crim. Proc. 42.12,
§23 (b). Bailey v. State, ___ S.W.3d ____ (Tex. Crim. App. No. 2189-01, delivered March 24, 2004
). Challenges based solely on the constitutionality of a condition must be filed as a writ of habeas corpus
pursuant to art. 11.072. Thus, an appellant who is not challenging the order granting deferred-adjudication
community supervision, but only a condition, cannot obtain relief via direct appeal.

 Because appellant must pursue his claim through procedures available under art. 11.072, we
conclude that our decision to grant review of appellant's petition was improvident. Accordingly we dismiss
appellant's petition.

 Per Curiam

En banc

Do not publish

Delivered: September 22, 2004
1. The conditions also included no contact with the Hortons, no possession of dangerous weapons, a
deposit for costs of extradition if appellant wished to leave Texas, probation fees of $60.00 per month, and fine and
court costs totaling $2,747.25.
2. We observe that the court of appeals' docket sheet and case management information show that the court
of appeals issued its opinion before the clerk's record and reporter's record were filed and before either party filed a
brief. 
3. Appellant also complains about a psychological evaluation that either was not performed or was legally
insufficient to determine his ability to function independently. He also mentions that he and the state had agreed
that he could present and argue his lack of ability to pay the agreed fine and court costs. The trial court refused his
request for argument and overruled his objection concerning the failure to perform a psychological evaluation. 
Appellant asserts that these claims are unrelated to his conviction and that the extra-notice requirements therefore
do not apply because of our holding in Vidaurri v. State, 49 S.W.3d 880 (Tex. Crim. App. 2001), that, based upon the
purposes of Rule 25.2(b)(3), if a defendant is appealing an issue which is unrelated to his conviction Rule 25.2(b)(3)
should not apply because the purpose behind the rule is not served. However, Vidaurri was an appeal after
revocation, adjudication, and sentencing, and involved complaints about the trial court's failure to hold a separate
punishment hearing. Id. Appellant here seeks to appeal before revocation occurs.
4. "Art. 11.072. Procedure in Community Supervision Case

 Sec. 1. This article establishes the procedures for an application for a writ of habeas corpus in a felony or
misdemeanor case in which the applicant seeks relief from an order or a judgment of conviction ordering
community supervision.

 Sec. 2. 

* * *

 (b) At the time the application is filed, the applicant must be, or have been, on community supervision, and
the application must challenge the legal validity of:

 (1) the conviction for which or order in which community supervision was imposed; or

 (2) the conditions of community supervision.
5. As the court of appeals pointed out, it is undisputed that appellant did not comply with Rule 25.2(b)(3). In
Speth v. State, 6 S.W.3d 530, 532 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1088 (2000), we stated that conditions
of community supervision are not part of the "sentence" but rather are separate parts of the judgment.